Filed 2/18/20

# **CERTIFIED FOR PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| LUKE EDWARD DUMAS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LOS ANGELES COUNTY BOARD OF SUPERVISORS et al., <br><br> Defendants and Respondents. | B288554 <br> (Los Angeles County <br> Super. Ct. No. BC618191) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Keosian, Judge. Affirmed.

Luke Edward Dumas, in pro. per., for Plaintiff and Appellant.

Coleman and Associates and John M. Coleman for Defendants and Respondents.

# INTRODUCTION

Appellant Luke Edward Dumas brought this action against respondents, the Los Angeles County Board of Supervisors and the Los Angeles County Sheriff's Department (collectively, "the County"), and others, alleging various civil rights violations. The trial court ultimately dismissed the complaint based on appellant's repeated discovery violations.

On appeal, appellant argues the court erred in, inter alia: (1) failing to notify him of its ruling striking his statement of disqualification; (2) sustaining the County's demurrer in part, despite its failure to meet and confer; (3) granting the County's motion to strike his request for punitive damages without considering his opposition; and (4) denying his motion to quash a subpoena for his medical records. We affirm.

# BACKGROUND

### A. *The Complaint and the County's Demurrer and Motion to Strike*

In 2016, appellant filed a complaint in propria persona against the County, the County Sheriff, as an individual, and others, asserting several causes of action relating to appellant's 2015 arrest by sheriff's department deputies. Among other things, the complaint alleged the defendants caused appellant physical and emotional injuries, and requested punitive damages.

The County concurrently demurred and moved to strike appellant's request for punitive damages. In a declaration

attached to the demurrer, the County's counsel stated he had sent "a written Meet and Confer request" to appellant, but had received no response. Appellant filed oppositions to both the demurrer and the motion to strike. As to the demurrer, appellant appeared to complain, inter alia, that counsel did not call him to meet and confer.

The trial court, Judge Gregory Keosian, sustained the demurrer in part without leave to amend, dismissing one cause of action as invalid, and dismissing the County Sheriff as a defendant because he could not be liable for his subordinates' actions. The court did not address appellant's apparent challenge to the meet and confer process. The court also granted the County's motion to strike, reasoning that public entities cannot be held liable for punitive damages.[1] (See Gov. Code § 818 ["Notwithstanding any other provision of law, a public entity is not liable for . . . damages imposed primarily for the sake of example and by way of punishing the defendant"].)

### B. *Appellant's Motion to Quash and Statement of Disqualification, and the Court's Dismissal of the Complaint*

During discovery, the County noticed appellant's deposition and subpoenaed his medical records from a third party. Appellant moved to quash the subpoena, arguing that

---

[1] In so doing, the court incorrectly stated that appellant had not filed an opposition to the County's motion.

3

it sought irrelevant information and would violate his right to privacy if enforced. The trial court denied the motion, noting appellant's allegations of physical and emotional injuries.

After appellant failed to appear for his deposition, the trial court granted the County's unopposed motion to compel. On January 23, 2018, appellant filed a statement of disqualification under Code of Civil Procedure section 170.3.[2] In that filing, which demonstrated appellant's familiarity with statutory disqualification procedures, appellant asserted, inter alia, that Judge Keosian was biased against him as a Mexican-American and a propria persona litigant, and was partial to the County. Three days later, on January 26, Judge Keosian struck the statement of disqualification as both untimely and facially disclosing no legal grounds for disqualification. Appellant did not petition for a writ of mandate to challenge this ruling.

Later that month, appellant again failed to appear for his deposition. On February 2, on the County's motion, the trial court issued an order to show cause why appellant's complaint should not be dismissed for his failure to comply with the order compelling his deposition. After appellant failed to appear for the hearing on the order to show cause or

---

[2] Under Code of Civil Procedure section 170.3, if a judge who should disqualify himself or herself fails to do so, any party may file a verified statement setting forth facts that constitute grounds for disqualification. (§ 170.3, subd. (c)(1).) Undesignated statutory references are to the Code of Civil Procedure.

4

to otherwise respond, the court dismissed the case without prejudice.  Appellant timely appealed.

## DISCUSSION

On appeal, appellant contends the trial court mishandled his statement of disqualification and erred in partially sustaining the County's demurrer.  He also seeks to challenge the court's ruling on the County's motion to strike and the denial of his motion to quash the County's subpoena. We address his claims in turn.

### A. *The Statement of Disqualification*

Appellant challenges the trial court's handling of his statement of disqualification, asserting primarily that he did not receive notice of Judge Keosian's ruling.  Section 170.1 provides certain grounds for the disqualification of a judge. Section 170.3 outlines the procedures for determining disqualification challenges.  As noted, under section 170.3, if a judge who should disqualify himself or herself fails to do so, any party may file a verified written statement setting forth facts constituting grounds for disqualification.  (§ 170.3, subd. (c)(1).)  The objecting party must file this statement at the "earliest practicable opportunity" after discovery of the relevant facts.  (*Ibid.*)

Once a party has filed a statement of disqualification, the judge has no power to act in the case until the question of disqualification has been determined.  (§ 170.4, subd. (d); *People v. Lind* (2014) 230 Cal.App.4th 709, 714 (*Lind*).)  The

5

judge may either (1) request another judge on whom the parties agree to take his or her place, without conceding disqualification; (2) file a "consent to disqualification"; or (3) file a "written verified answer admitting or denying any or all of the allegations . . . ." (§ 170.3, subds. (c)(2) & (3).)  If the judge refuses to recuse, the question of disqualification is generally to be determined by another judge.  (§ 170.3, subd. (c)(5).)  However, under section 170.4, subdivision (b), if the statement is untimely or on its face discloses no legal grounds for disqualification, the judge may strike it.  (*Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 420 (*Urias*).)  "Failure to take any action within 10 days [is] deemed a consent to disqualification."  (*Hollingsworth v. Superior Court* (1987) 191 Cal.App.3d 22, 26 (*Hollingsworth*); accord, § 170.3, subd. (c)(3) & (4).)  "Thereafter, the judge is deemed disqualified and has no power to act in the case."  (*Hollingsworth*, at p. 26.)

The determination of the question of disqualification, including the striking of the objecting party's statement under section 170.4, subdivision (b), is not an appealable order.  (See *PBA, LLC v. KPOD, Ltd.* (2003) 112 Cal.App.4th 965, 971 (*PBA*) [appellants were precluded from seeking review of stricken statements of disqualification on appeal].)  A party seeking review must petition for a writ of mandate "within 10 days after service of written notice of entry of the court's order . . . ." (§ 170.3, subd. (d).)

Judge Keosian struck appellant's statement of disqualification under section 170.4, subsection (b), concluding it was both untimely and facially failed to disclose

6

grounds for disqualification. Appellant appears to acknowledge he may not directly challenge this ruling on appeal. He asserts, however, that he never received notice of the ruling and was therefore unable to petition for a writ of mandate. The record does not support this assertion.

In his statement of disqualification, appellant exhibited familiarity with disqualification procedures, including the requirement that the challenged judge respond to the statement in some way within 10 days, and the suspension of the judge's power to act in the case until the question of disqualification has been determined. (See §§ 170.3, subd. (c)(3) & (4), 170.4, subd. (d); *Lind*, *supra*, 230 Cal.App.4th at p. 714; *Hollingsworth*, *supra*, 191 Cal.App.3d at p. 26; *Urias*, *supra*, 234 Cal.App.3d at p. 420.) On February 2, 2018, 10 days after appellant filed his statement of disqualification (and seven days after Judge Keosian struck that statement), Judge Keosian issued an order to show cause why the complaint should not be dismissed. Appellant does not dispute receiving notice of the order to show cause. His subsequent failure below to claim he had not received notice of any action on his statement of disqualification, or to complain that Judge Keosian had no power to issue an order to show cause while the disqualification question was pending, suggests he was in fact aware that Judge Keosian had stricken the statement. To the extent appellant argues Judge Keosian erred in striking his statement of disqualification, that claim is not reviewable on appeal. (See § 170.3, subd. (d); *PBA*, *supra*, 112 Cal.App.4th at p. 971.)

7

**B. *The Demurrer***

Appellant argues the County failed to properly meet and confer with him before filing the demurrer.  He contends that under section 430.41, the County's insufficient efforts required the trial court to overrule the demurrer.  Appellant's contentions regarding the meaning of the statute raise questions of law subject to de novo review.  (See *In re T.B.* (2009) 172 Cal.App.4th 125, 129 [interpretation of statute reviewed de novo].)

Under section 430.41, before filing a demurrer, the demurring party must meet and confer with the party who filed the challenged pleading "in person or by telephone" to determine if the demurring party's objections can be resolved by agreement.  (§ 430.41, subd. (a)(1).)  If the parties are unable to meet and confer at least five days before the responsive pleading is due, the demurring party must file a declaration stating that a good faith attempt to meet and confer was made and explaining the reasons the parties could not meet and confer.  (*Id.*, subd. (a)(2).)  This declaration results in an automatic 30-day extension of the time to file the responsive pleading.  (*Ibid.*)  However, under section 430.41, subsection (a)(4), "[a]ny determination by the court that the meet and confer process was insufficient shall not be grounds to overrule or sustain a demurrer."  (*Ibid.*; see also *Olson v. Hornbrook Community Services Dist.* (2019) 33 Cal.App.5th 502, 515 (*Olson*) [relying on § 430.41, subd. (a)(4), in rejecting claim that party's failure to meet and confer deprived trial court of jurisdiction over pleadings]; Weil & Brown, Cal.

Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2019) ¶ 7:97.27, p. 7(l)-48 ["failure to sufficiently meet and confer is not grounds to overrule or sustain a demurrer"].)

In a declaration attached to the County's demurrer, counsel described sending appellant a "written Meet and Confer request" but receiving no response.  Appellant contends this written request did not satisfy section 430.41's requirement of a meeting "in person or by telephone."  We need not address the adequacy of the County's efforts to meet and confer, as any insufficiency in the process would not undermine the trial court's ruling on the County's demurrer. (See § 430.41, subd. (a)(4); *Olson*, *supra*, 33 Cal.App.5th at p. 515.)

Citing no authority, appellant argues section 430.41, subdivision (a)(4), applies only after the demurring party files a declaration of inability to meet and confer by the deadline and obtains the automatic 30-day extension under section 430.41, subdivision (a)(2).  He claims that absent this action by the demurring party, the court may not disregard defects in the meet and confer process.  We disagree.

Nothing in the text of section 430.41, subdivision (a)(4), conditions its operation on compliance with other provisions. To the contrary, it instructs that "[a]ny" determination that the process was insufficient will not be grounds to overrule the demurrer.[3]  (§ 430.41, subd. (a)(4); see also Weil & Brown,

---

[3]     Of course, trial courts are not required to ignore defects in the meet and confer process.  If, upon review of a declaration

(*Fn. is continued on the next page*.)

Cal. Practice Guide: Civil Procedure Before Trial, *supra,*
¶ 7:97.27.) Accordingly, the trial court did not err in
sustaining the demurrer in part.[4]

### C. *Appellant's Other Claims*

Appellant challenges the trial court's rulings on the
County's motion to strike and his motion to quash the

---

under section 430.41, subdivision (a)(3), a court learns no meet
and confer has taken place, or concludes further conferences
between counsel would likely be productive, it retains discretion to
order counsel to meaningfully discuss the pleadings with an eye
toward reducing the number of issues or eliminating the need for a
demurrer, and to continue the hearing date to facilitate that effort.
(See *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967-
968 [courts have inherent authority to regulate proceedings in
ways consistent with statutes]; § 430.41, subd. (c) [addressing
meet and confer conferences following grant of demurrer with
leave to amend; "Nothing in this section [§ 430.41] prohibits the
court from ordering a conference on its own motion *at any time* or
prevents a party from requesting that the court order a conference
to be held" (emphasis added)].)

[4]     Appellant asserts in conclusory fashion that the trial court
abused its discretion by denying him leave to amend. A trial court
abuses its discretion in denying leave to amend if the plaintiff can
show a reasonable possibility of curing the defect in the complaint
by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)
Because appellant makes no effort to show he could cure the
defects the trial court identified in his complaint, he cannot
establish the court abused its discretion in denying him leave to
amend. (See *Heritage Pacific Financial, LLC v. Monroy* (2013) 215
Cal.App.4th 972, 994 [plaintiff has burden to prove amendment
would cure defect in complaint].)

County's subpoena for his medical records. These claims cannot affect the trial court's judgment dismissing the case based on appellant's failure to respond to an order to show cause.[5] We therefore need not consider those contentions. (See *Kaiser Foundation Health Plan, Inc. v. Superior Court* (2012) 203 Cal.App.4th 696, 715 ["We decline to review an issue that will have no effect on the parties"]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 259 [declining to resolve matters that were unnecessary to appellate decision].) Moreover, were we to consider appellant's additional claims, we would reject them.

As to the motion to strike his request for punitive damages from the complaint, appellant notes that in granting the motion, the trial court incorrectly stated he had not filed

[5] While appellant generally complains that dismissal of his complaint was unjust, his opening brief advances no reasoned, independent challenge to the trial court's order of dismissal following his failure to respond to the order to show cause. In his reply brief, appellant complains that the trial court scheduled the hearing on the order to show cause for a time in which he had a trial scheduled in a different case. He has forfeited this contention by failing to object below and to raise the issue in his opening brief. (See *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 (*Perez*); *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 726 [failure to raise argument in opening brief constitutes forfeiture].) Moreover, at appellant's request, we have taken judicial notice of a minute order dismissing the other proceeding after he failed to appear on the day set for trial. Because appellant failed to appear in both cases, he cannot claim the scheduling conflict caused his failure to appear in this case.

11

an opposition. But the court's oversight did not prejudice appellant: it granted the motion on the ground that public entities are not liable for punitive damages, a conclusion appellant does not challenge on appeal. Because appellant has shown no prejudice from the trial court's apparent failure to consider his opposition, his challenge to the court's ruling must fail. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822 ["'It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result'"].)

As for the denial of appellant's motion to quash the County's subpoena, appellant suggests he did not place his medical records at issue, as would justify the invasion of his right to privacy, because he did not assert claims for disability discrimination. But while he did not sue for disability discrimination, appellant alleged he sustained both physical and emotional injuries as a result of the County's conduct, placing his medical history at issue. To the extent he suggests the subpoena was overbroad, he has forfeited this argument by failing to raise it below. (See *Perez, supra,* 169 Cal.App.4th at pp. 591-592 ["arguments raised for the first time on appeal are generally deemed forfeited"].)

## DISPOSITION

The judgment is affirmed.  The County shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

WILLHITE, J.

CURREY, J.